**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRAVELL DARNELL POGUE,<br><br>        Petitioner,<br><br>    v.<br><br><br><br><br>GARY SWARTHOUT,<br><br>        Respondent. | Case No. 1:11-cv-00192-LJO-SKO-HC<br><br>ORDER SUBSTITUTING WARDEN GARY SWARTHOUT AS RESPONDENT<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS PETITIONER'S STATE LAW CLAIM, DENY THE REMAINDER OF THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 34), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the first amended petition (FAP), which was filed on July 15, 2013.  Respondent filed an answer to the originally filed petition and requested that it serve as the answer to the FAP.  By order dated July 16, 2013, the Court authorized the FAP, directed that the previously filed answer be considered as the

1

answer to the FAP, and granted Petitioner thirty (30) days to file a traverse.  Although the order was served on Petitioner at the address listed in the docket, Petitioner did not file a traverse.

    I.  Jurisdiction and Substitution of Respondent

    Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

    The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

    An answer was filed on behalf of Respondent Anthony Hedgpeth, Warden of the Salinas Valley State Prison (SVSP), who pursuant to the judgment had custody of Petitioner at the SVSP, his institution of confinement when the petition and answer were filed.  (Doc. 23, 6; doc. 1, 1.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and

Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).  The fact that Petitioner was transferred to the California State Prison-Solano (CSP-SOL) at Vacaville, California after the petition was filed does not affect this Court's jurisdiction.  Jurisdiction attaches on the initial filing for habeas corpus relief and is not destroyed by a transfer of the petitioner and the accompanying custodial change.  Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (citing Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971)).  Accordingly, the Court has jurisdiction over the person of the Respondent.

However, in view of the fact that the warden at CSP-SOL is Gary Swarthout, it is ORDERED that Gary Swarthout, Warden of CSP-SOL, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

## II.   Procedural Summary

On August 28, 2008, at a jury trial in the KCSC, Petitioner was convicted of attempted murder, first degree burglary, and assault with a deadly weapon.  (2 CT 380-89.)  The jury found as to the murder charge that Petitioner personally used a deadly weapon, a knife, and that in committing the crime he inflicted great bodily injury.  (Id. at 381-82.)  As to the burglary charge, the jury found that "another person, other than an accomplice, was present in the residence" (id. at 385); and as to the assault with a deadly weapon

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

1  charge, the jury found that Petitioner personally inflicted great

2  bodily injury (id. at 387).

3  Petitioner was sentenced to thirteen years in prison, including

4  nine years for the attempted murder, one year for use of a knife,

5  and three years for infliction of great bodily injury. (2 CT 393-

6  96.) The respective sentences for the burglary and assault

7  convictions, along with their related enhancements, were stayed

8  under Cal. Pen. Code § 654. (Id. at 396.)

9  Petitioner appealed to the Court of Appeal of the State of

10 California, Fifth Appellate District (CCA), and raised the following

11 claims: 1) ineffective assistance of trial counsel for failing to

12 request an alibi instruction, 2) instructional error from the

13 failure of CALJIC No. 2.90 properly to inform the jury of the

14 reasonable doubt standard, 3) prejudicial prosecutorial misconduct,

15 and 4) improper enhancement of his sentence. (LD 1, App. Op. Brf.)[2]

16 On November 16, 2009, the CCA affirmed the judgment in an

17 unpublished, decision in People v. Travell Darnell Pogue, case

18 number F056268. (LD 4.) The CCA did not consider Petitioner's

19 sentence enhancement claim because he withdrew that claim. (LD 3,

20 Applt.'s Reply Brf., 17.)

21 On January 21, 2010, Petitioner's petition for review was

22 summarily denied by the California Supreme Court (CSC) without a

23 statement of reasons or citation to authority in People v. Travell

24 Darnell Pogue, case number S178612. (LD 6.)

25 III. Factual Summary

26 In a habeas proceeding brought by a person in custody pursuant

27 to a judgment of a state court, a determination of a factual issue

28 

---

[2] "LD" refers to documents lodged by Respondent in connection with the answer.

4

by a state court shall be presumed to be correct; the petitioner has
the burden of producing clear and convincing evidence to rebut the
presumption of correctness.   28 U.S.C. § 2254(e)(1); Sanders v.
Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).   This presumption
applies to a statement of facts drawn from a state appellate court's
decision.   Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).
The following statement of facts is taken from
the opinion of the CCA (LD 4):

### FACTUAL BACKGROUND

After a young woman who lived across the street from Pogue
repeatedly rebuffed his advances, he attacked her inside
her home, punching her again and again in the face,
stabbing her 15 times with a knife, and choking her so
hard she gasped for air. He left only after she feigned
death. A neighbor testified that before the attack the
young woman asked him and his wife to keep an eye on her
because Pogue was bothering her and that on the morning of
the attack he saw Pogue outside her house.

The young woman's stepfather testified that he found a
bloody tip of a knife blade in his bedroom shortly after
the attack and that a friend of the young woman's found a
knife handle in her bedroom a few days later. Her mother
corroborated her stepfather's testimony about the
discovery of the knife handle and testified that before
the attack her daughter told her she felt threatened by
the guy across the street.

A criminalist at the regional crime laboratory and a
forensic DNA analyst at an independent laboratory analyzed
blood from the crime scene. The young woman was the sole
possible contributor of the blood on a swab of the tip of
the knife blade. She and Pogue both were possible
contributors of the blood on a swab of a sock wrapped
around the knife handle.

The first officer to arrive at the crime scene testified
that the young woman identified her attacker as the young
man who lived across the street from her. Pogue's
girlfriend testified that he was at home with her at the
time of the attack.

(LD 4, 2.)

///

IV.   Ineffective Assistance of Counsel

Petitioner contends his rights to counsel, due process of law, and a fundamentally fair trial were violated by trial counsel's failure to request an alibi instruction.

A.   Standard of Decision and Scope of Review

With respect to the nature and scope of this Court's review in this proceeding, 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
>
> judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

6

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's

7

conclusions unreasonable.  Id.

     To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

     In assessing whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400.  Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden of producing clear and convincing evidence to rebut the presumption of

correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.  Ineffective Assistance of Counsel

#### 1.  Legal Standards

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Premo v. Moore, - U.S. -, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

With respect to this Court's review of a state court's decision concerning a claim of ineffective assistance of counsel, the Supreme Court has set forth the standard of decision as follows:

> To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." Knowles v. Mirzayance, 556 U.S. --,--,129

9

S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing
this standard and its relationship to AEDPA, the Court
today in Richter, -- U.S., at -- - --, 131 S.Ct. 770,
gives the following explanation:

> "To establish deficient performance, a person
> challenging a conviction must show that
> 'counsel's representation fell below an
> objective standard of reasonableness.'
> [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052].
> A court considering a claim of ineffective
> assistance must apply a 'strong presumption'
> that counsel's representation was within the
> 'wide range' of reasonable professional
> assistance. Id., at 689 [104 S.Ct. 2052]. The
> challenger's burden is to show 'that counsel
> made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.' Id., at 687
> [104 S.Ct. 2052].

> "With respect to prejudice, a challenger must
> demonstrate 'a reasonable probability that, but
> for counsel's unprofessional errors, the result
> of the proceeding would have been different.'
> ...

> " 'Surmounting Strickland's high bar is never an
> easy task.' Padilla v. Kentucky, 559 U.S. --, --
> [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010).
> An ineffective-assistance claim can function as
> a way to escape rules of waiver and forfeiture
> and raise issues not presented at trial [or in
> pretrial proceedings], and so the Strickland
> standard must be applied with scrupulous care,
> lest 'intrusive post-trial inquiry' threaten the
> integrity of the very adversary process the
> right to counsel is meant to serve. Strickland,
> 466 U.S., at 689-690 [104 S.Ct. 2052]. Even
> under de novo review, the standard for judging
> counsel's representation is a most deferential
> one. Unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew
> of materials outside the record, and interacted
> with the client, with opposing counsel, and with
> the judge. It is 'all too tempting' to 'second-
> guess counsel's assistance after conviction or

10

adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles, 556 U.S., at ----, 129 S.Ct., at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

Premo v. Moore, 131 S.Ct. at 739-40 (quoting Harrington v. Richter, 131 S.Ct. 770 (2011)).

## 2.   The State Court Decision

The last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).   Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the CCA's decision was the last decision in which the state court adjudicated Petitioner's claims on the merits.   Where

11

there has been one reasoned state judgment rejecting a federal

claim, later unexplained orders upholding that judgment or rejecting

the same claim are presumed to rest upon the same ground.  Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991).  This Court will thus "look

through" the unexplained decision of the California Supreme Court to

the CCA's last reasoned decision as the relevant state court

determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998

n.5 (9th Cir. 2004).

The pertinent portion of the CCA's decision is as follows:

**DISCUSSION**

1. *Alibi Instruction*

Pogue argues that his attorney's failure to request an
alibi instruction was ineffective assistance of counsel.
The Attorney General argues the contrary.

The parties agree, and the record confirms, that Pogue's
attorney did not request, and the court did not give, an
alibi instruction. The parties agree, too, that a court,
on request, has a duty to give an alibi instruction on a
record of substantial alibi evidence but, in the absence
of a request, has no sua sponte duty to do so. (See, e.g.,
*People v. Freeman* (1978) 22 Cal.3d 434, 437-439
(*Freeman*).) On that background, Pogue argues that "it
would have been appropriate for defense counsel to seek
pinpoint instructions explaining the sole defense theory
presented by the evidence-alibi-to the jurors" since his
girlfriend and his mother testified he was at home at the
time of the attack.

The right to counsel protects the due process right to a
fair trial not only by guaranteeing "access to counsel's
skill and knowledge" but also by implementing the
constitutional entitlement to an "'ample opportunity to
meet the case of the prosecution.'" (*Strickland v.
Washington* (1984) 466 U.S. 668, 684-686 (*Strickland*).) To
establish ineffective assistance, the defendant must show
that counsel's performance "fell below an objective

12

standard of reasonableness" and prejudiced the defense.
(*Id.* at pp. 687-692; *People v. Ledesma* (1987) 43 Cal.3d
171, 216-217 (*Ledesma*).) To establish prejudice, the
defendant must make a showing "sufficient to undermine
confidence in the outcome" of a "reasonable probability"
that but for counsel's performance "the result of the
proceeding would have been different ." (*Strickland*,
*supra*, at pp. 693-694; *Ledesma*, *supra*, at pp. 217-218.) A
reviewing court can adjudicate an ineffective assistance
claim solely on the issue of prejudice without evaluating
counsel's performance. (*Strickland*, *supra*, at p. 697.)

In *People v. Alcala* (1992) 4 Cal.4th 742, where the
defense was alibi, the defendant claimed reversible error
on the ground that the court failed to instruct sua sponte
on alibi. (*Id.* at p. 803.) The court did instruct,
however, with CALJIC Nos. 2.20 ("Believability of
Witness"), 2.21.1 ("Discrepancies in Testimony"), 2.22
("Weighing Conflicting Testimony"), 2.27 ("Sufficiency of
Testimony of One Witness"), and 2.90 ("Presumption of
Innocence-Reasonable Doubt-Burden Of Proof"). (*Ibid.*) "For
the purpose of instructing with respect to an alibi
defense, it is sufficient that the jury be instructed
generally to consider all the evidence, and to acquit the
defendant in the event it entertains a reasonable doubt
regarding his or her guilt." (*Id.* at p. 804, citing
*Freeman, supra*, 22 Cal.3d at p. 438.) Rejecting the
defendant's claim as meritless, our Supreme Court held
that the jury "was so instructed." (*Alcala, supra*, at p.
804.)

Here, as in *Alcala*, the court instructed the jury with
CALJIC Nos. 2.20, 2.21.1, 2.22, 2.27, and 2.90. (*Alcala*,
*supra*, 4 Cal.4th at p. 803.) Here, as in *Alcala*, the
absence of an alibi instruction was harmless in light of
sufficient general instruction with respect to an alibi
defense. (*Id.* at p. 804.) Since the law and the record
preclude Pogue from showing that "the result of the
proceeding would have been different" had his attorney
requested an alibi instruction (see *Strickland, supra*, at
pp. 693-694; *Ledesma, supra*, at pp. 217-218), we reject
his ineffective assistance of counsel argument solely on
the issue of prejudice without evaluating his attorney's
performance. (See *Strickland, supra*, 466 U.S. at p. 697.)

(LD 4, 3-5.)

13

/// 

/// 

### 3.  Analysis

Petitioner premises his claim of ineffective assistance on counsel's failure to request an instruction that would have explained the alibi defense theory and the prosecution's burden of proof with respect to alibi evidence.  In his arguments to the CCA and the CSC, Petitioner noted that the then-current standard alibi instruction, CALCRIM number 3400, informed the jury that the People must prove that the defendant was present and committed the charged offenses; defendant contended he did not commit the crimes and was elsewhere when the crimes were committed; defendant did not need to prove he was elsewhere at that time; if the jury had a reasonable doubt about whether the defendant was present when the crime was committed, it must find the defendant not guilty; but the defendant may also be guilty if he aided and abetted or conspired with someone to commit the crimes even if he was not present.  (LD 1, Aplt.'s Op. Brf., 22 n.3; LD 5, Petn. for Rev., 9.)

Trial counsel argued to the jury that the initial photographic identification by the victim at the hospital suggested that Petitioner was the perpetrator, the DNA evidence was likely the result of an unintentional transfer made by law enforcement officers who had handled evidence and Petitioner soon after the crime, and the remaining physical evidence was inconsistent with Petitioner's having committed the crime.  Counsel stated, "The eyewitness identification in this case, when you weigh it against the physical evidence of the shoe and the lack of blood, it has to go."  (3 RT

637.)  Counsel also argued that there was the alibi testimony of the Petitioner's girlfriend and mother.  (Id. at 639.)

The jury instructions informed the jury regarding the prosecution's burden of proof beyond a reasonable doubt, the elements of the offenses and the enhancements, the jury's duty to judge the credibility of witnesses and factors pertinent to that judgment, discrepancies in witnesses' testimony, the weighing of conflicting testimony, and the sufficiency of the testimony of one witness.  (2 RT 349-63, 330-47.)  The jury was instructed concerning the burden of proving identity based solely on eyewitnesses:

> The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged.
>
> If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt whether defendant was the person who committed the crime, you must give the defendant the benefit of that doubt and find him not guilty.

(Id. at 346.)  The jury was further instructed on the factors to be considered when evaluating eyewitness testimony regarding defendant's identity as the perpetrator, including the believability of the eyewitness as well as many other factors bearing upon the accuracy of the identification.  (Id. at 347-48.)

The foregoing review of the instructions given reflects that the jury was in effect instructed on the burden to prove beyond a reasonable doubt that the defendant was the perpetrator, that the burden rested on the People and not the defendant, and that if the jury had a reasonable doubt about whether the defendant was present

15

when the crime was committed, it must find the defendant not guilty. Reasonable doubt was defined, and standard instructions concerning circumstantial evidence and conflicting inferences were given.  (3 RT 327-28.)

Considering the defense argument and the entirety of the instructions, Petitioner received sufficient instructions on the alibi defense theory and the prosecution's burden of proof with respect to alibi evidence such that the state court reasonably concluded that Petitioner had not shown a probability of a different result if a pin-point alibi defense instruction had been given.

In sum, the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, it will be recommended that the Court deny Petitioner's claim of ineffective assistance of counsel based on failure to request an alibi instruction.

V.   Instruction on Reasonable Doubt

Petitioner claims that the reasonable doubt instruction given to the jury, CALJIC No. 2.90, violated his due process rights because it failed to inform the jury that "the burden of proof beyond a reasonable doubt requires proof beyond a reasonable doubt of each fact necessary to prove the charged offense," as the Court in In re Winship held was required by the Due Process Clause.  (Doc. 34, 30.)  Respondent argues that the state court's adjudication

of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

This claim was raised on direct appeal to the CCA (LD 1, 33-47), which denied the claim (LD 4 at 5-7); it was then raised again in a petition for review (LD 5, 15-21), which was summarily denied by the CSC without a statement of reason or authority (LD 6).  This Court will look through the CSC's denial of review to the CCA's decision.

A.   The State Court Decision

The pertinent part of the decision of the CCA is as follows:

2. CALJIC No. 2.90

Pogue argues that CALJIC No. 2.90 denied him due process by failing to inform the jury that the prosecution's burden of proof beyond a reasonable doubt applies to every fact necessary to establish the charged offense. The Attorney General argues the contrary.

The court instructed Pogue's jury, in relevant part, with CALJIC No. 2.90: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt." He contrasts that part of CALJIC No. 2.90 with, in his words, the "current CALCRIM definition of the burden of proof beyond a reasonable doubt," which, he says, reads, in relevant part, "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime [and special allegation] beyond a reasonable doubt." (Former CALCRIM No. 220, italics added.)

Although Pogue characterizes the "each element" language of CALCRIM No. 220 as an "indispensable requirement" of a correct reasonable doubt instruction, that language was

17

deleted from that instruction two years before his trial. (CALCRIM No. 220 (Aug.2006 rev.) (2006-2007).) Ever since, the instruction has read, in relevant part, as follows: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt." (CALCRIM No. 220.) That language is substantively indistinguishable from the language he assails in CALJIC No. 2.90, even though the latter language has withstood federal and state constitutional challenge. (See *People v. Brown* (2004) 33 Cal.4th 382, 392, citing *Victor v. Nebraska* (1994) 511 U.S. 1; *People v. Freeman* (1994) 8 Cal.4th 450.)

*People v. Ramos* (2008) 163 Cal.App.4th 1082 (*Ramos*) squarely rejected an argument identical to Pogue's. (*Id.* at pp. 1087-1090.) Ramos held that CALCRIM No. 220 together with other instructions "adequately informed the jury that the prosecution was required to prove each element of the charged crime beyond a reasonable doubt." (*Id.* at p. 1089, italics added.) Here, CALCRIM No. 220 together with other instructions did just that. For example, CALCRIM No. 600 informed the jury that to find him guilty of attempted murder the prosecution had to prove he took at least one direct but ineffective step toward killing another person and intended to kill that person. CALCRIM Nos. 1700 and 1701 informed the jury that to find him guilty of first-degree burglary the prosecution had to prove he entered a building, the building was an inhabited house, and he intended at the time of entry to commit attempted murder or assault with a deadly weapon. CALCRIM No. 875 informed the jury that to find him guilty of assault with a deadly weapon the prosecution had to prove he did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person, he did the act willfully, when he did so he was aware of facts that would lead a reasonable person to realize the act by its nature would directly and probably result in the application of force to someone, and when did so he had the present ability to apply force with a deadly weapon to a person.

Additionally, Ramos observed that "the comparable CALJIC instruction (CALJIC No. 2.90), which for decades was the standard reasonable doubt instruction in our state, does not specify that each and every element must be proven beyond a reasonable doubt." (*Ramos, supra*, 163 Cal.App.4th

18

1    at p. 1090, fn. 7.) Finally, Pogue identifies nothing in
2    the record even intimating to the jury that the
     prosecution's burden of proof beyond a reasonable doubt
3    does not apply to every fact necessary to establish the
     charged offense.
4
5    On appeal, the standard of review of an instruction
     challenged for ambiguity is whether there is a reasonable
6    likelihood that the jury applied the instruction in a way
     that denied fundamental fairness. (See *Estelle v. McGuire*
7    (1991) 502 U.S. 62, 72-73; *People v. Clair* (1992) 2
     Cal.4th 629, 663.) By that standard, Pogue's CALCRIM 220
8    argument is meritless.

9    (LD 4, 5-7.)

10         B.   Analysis

11
12       Due process requires the government to prove beyond a
13   reasonable doubt every fact necessary to constitute the charged
14   offense.  In re Winship, 397 U.S. 358, 364 (1970).  However, the
15   Constitution requires only that the jury be instructed that the
16   defendant's guilt be proved beyond a reasonable doubt; it does not
17   require that any particular form of words be used in advising the
18   jury of the government's burden of proof.  Jackson v. Virginia, 443
19   U.S. 307, 320, n.14 (1979).  Taken as a whole, the instructions must
20   correctly convey the concept of reasonable doubt to the jury.
21   Victor v. Nebraska, 511 U.S. 1, 5 (1994).  The constitutional
22   question is whether there is a reasonable likelihood that the jury
23   understood the instructions to allow conviction based on proof
24   insufficient to meet the Winship standard.  Victor, 511 U.S. 6;
25   Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999), cert. den. 528
26   U.S. 829 (1999).
27       The instruction given in this case, CALJIC 2.90, was as
28   follows:

19

> A defendant in a criminal action is presumed to be
> innocent until the contrary is proved, and in case of
> a reasonable doubt whether his guilt is satisfactorily
> shown, he is entitled to a verdict of not guilty.
> This presumption places upon the People the burden of
> proving him guilty beyond a reasonable doubt.
>
> Reasonable doubt is defined as follows:  It is not
> a mere possible doubt; because everything relating
> to human affairs is open to some possible or imaginary
> doubt.  It is that state of the case which, after the
> entire comparison and consideration of all the evidence,
> leaves the minds of the jurors in that condition that
> they cannot say they feel an abiding conviction of the
> truth of the charge.

(2 CT 345.)

In _Victor v. Nebraska_, 511 U.S. 1, the Court considered the constitutionality of an earlier version of CALJIC No. 2.90 that was identical with the instruction given in this case with the exception of two additional phrases that were the subject of the Court's review in _Victor_ and which are indicated by emphasis in the following quotation:

> A defendant in a criminal action is presumed to be innocent
> until the contrary is proved, and in case of a reasonable
> doubt whether his guilt is satisfactorily shown, he is
> entitled to a verdict of not guilty. This presumption
> places upon the State the burden of proving him guilty
> beyond a reasonable doubt.
>
> Reasonable doubt is defined as follows: It is not
> a mere possible doubt; because everything relating
> to human affairs, _and depending on moral evidence_,
> is open to some possible or imaginary doubt. It is
> that state of the case which, after the entire
> comparison and consideration of all the evidence,
> leaves the minds of the jurors in that condition
> that they cannot say they feel an abiding conviction,
> _to a moral certainty_, of the truth of the charge.

20

<u>Victor v. Nebraska</u>, 511 U.S. at 7.

The Court concluded it was not reasonably likely that the jury understood the words "moral certainty" either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof.  The Court, however, did not condone the use of the phrase.  The Court approved the reference to "a mere possible doubt," <u>id.</u> at 17, and concluded that in the context of the instructions as a whole, it could not say that the use of the instruction was unconstitutional.  <u>Victor</u>, 511 U.S. at 10-17.

Here, the instruction given omitted the two phrases concerning moral evidence and moral certainty that were criticized by the Court in <u>Victor</u>, but it was otherwise identical with that found adequate in <u>Victor</u>.  Accordingly, the state court's decision that the instruction did not violate due process was not contrary to, or an unreasonable application of, Supreme Court precedent.  <u>See</u>, <u>Drayden v. White,</u> 232 F.3d 704, 715 (9th Cir. 2000) (denying habeas relief where claim of ineffective assistance of counsel was predicated on counsel's failure to object to a reasonable doubt instruction identical to that given here because the instruction had been found legally sufficient in <u>Victor</u>).

Even if Petitioner had established instructional error, he would not be entitled to relief unless the error by itself so infected the entire trial that the resulting conviction violates due process.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991); <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973); <u>see</u>, <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  Petitioner has not shown that any unfairness resulted from the challenged instruction.  Accordingly,

it will be recommended that Petitioner's claim concerning the reasonable doubt instruction be denied.

### VI.   Prosecutorial Misconduct

Petitioner alleges his conviction must be reversed because in argument to the jury, the prosecutor committed multiple instances of misconduct.  Although Petitioner's trial counsel failed to object to the alleged misconduct, Petitioner argues that these omissions violated his right to the effective assistance of counsel. Respondent contends Petitioner's claims fail because they are procedurally defaulted and, even if not defaulted, nevertheless fail because the state court's decision rejecting them was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner's misconduct claims were raised first on direct appeal to the CCA (LD 1, 48-70), which rejected them (LD 4 at 7-13), and next in a petition for review (LD 5, 21-33), which was denied by the CSC summarily without a statement of reasons or citation of authority (LD 6).  Accordingly, this Court will look through the CSC's silent denial to the last reasoned decision of the CCA.

### A.   Procedural Default

Respondent argues that Petitioner's prosecutorial misconduct claims are barred because Petitioner's trial counsel failed to lodge a contemporaneous objection to the misconduct.

### 1.   The State Court Decision

In its decision, the CCA initially addressed Petitioner's claim of prosecutorial misconduct as follows:

> Pogue argues that prosecutorial misconduct in argument to the jury denied him due process and that his attorney's failure to object was ineffective assistance of

22

counsel. The Attorney General argues that Pogue forfeited
his right to appellate review by failing to make a
contemporaneous objection to each comment he characterizes
as prosecutorial misconduct, that there was no
prosecutorial misconduct, and that, even if there were,
there was no prejudice.

To analyze the Attorney General's forfeiture argument, we
turn to the portions of the record on which Pogue relies
and to the differing characterizations by the parties of
those portions of the record.

(LD 4, 7.)  The CCA then, without further analysis, set forth the

legal and factual bases of Petitioner's five allegations of

misconduct.  (Id. at 7-12.)  The CCA then concluded as follows:

The standard of review of a prosecutorial misconduct claim
is settled. (*People v. Parson* (2008) 44 Cal.4th 332, 359
(*Parson*).) A prosecutor who uses deceptive or
reprehensible methods to persuade the jury commits
misconduct that requires reversal under the federal
Constitution when those methods infect the trial with such
unfairness as to deny due process. (*Ibid.*) Under state
law, a prosecutor who uses those methods commits
misconduct even when a fundamentally unfair trial does not
ensue. (*Ibid.*) To preserve a claim of misconduct, a
defendant must make a timely objection and request an
admonition. (*Ibid.*) Only if an admonition would not have
cured the harm is a claim of misconduct preserved for
review. (*Ibid.*)

To prevail on an appellate claim of prosecutorial
misconduct in argument to the jury, the defendant must
show a reasonable likelihood that the jury understood or
applied the comments at issue in an improper or erroneous
manner. (*People v. Frye* (1998) 18 Cal.4th 894, 970 (*Frye*),
disapproved on another ground by *People v. Doolin* (2009)
*45 Cal.4th 390, 421, fn. 22*) *In reviewing the record,* the
appellate court does not "lightly infer" that the jury
drew the most damaging, rather than the least damaging,
meaning from the prosecutor's comments. (*Frye, supra*, at
p. 970.) Our review of the record shows that the Attorney
General's benign characterizations of the prosecutor's
comments are consistently more plausible than Pogue's
malign characterizations. Pogue's claim of "incurable"

prosecutorial misconduct is not at all persuasive. Since an admonition could have cured the harm, if any, he forfeited his right to appellate review by failing to make a contemporaneous objection to each comment he now characterizes as prosecutorial misconduct.

Even if Pogue had not forfeited his right to appellate review, the record of the compelling evidence of his guilt-the testimony of the young woman, her neighbor, her stepfather, her mother, and the first officer at the scene, together with the DNA analysis of blood from the tip of the knife blade and from the sock wrapped around the knife handle-persuades us that there is no reasonable likelihood that the jury misconstrued or misapplied the prosecutor's comments. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1304, citing *People v. Clair* (1992) 2 Cal.4th 629, 662-663.)

Finally, we turn to Pogue's ineffective assistance of counsel argument. A defendant has a duty to show that the lack of an objection was not due to a tactical decision a reasonably competent and experienced criminal defense attorney would make. (*People v. Gurule* (2002) 28 Cal.4th 557, 610-611.) An attorney may choose not to object for many reasons, and failure to object rarely establishes ineffective assistance of counsel. (*People v. Avena* (1996) 13 Cal.4th 394, 421.) That is so here. Our role is not to second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight. (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.) We reject his ineffective assistance of counsel argument.

(LD 4, 12-13.)

## 2.  Analysis

The doctrine of procedural default is a specific application of the more general doctrine of independent state grounds.  It provides that when a state court decision rests on a prisoner's violation of either a state procedural rule that bars adjudication on the merits or a state substantive rule that is dispositive of the case, and the state law ground is independent of the federal question and adequate

to support the judgment so as to bar direct review in the United States Supreme Court, the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice.  Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).  The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Because state procedural default is an affirmative defense, the state has the obligation to plead the defense or lose the right to assert the defense thereafter.  Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).  Further, the state bears the ultimate burden of persuasion as to the adequacy and independence of the pertinent rule.  Id. at 585-86.  Once the state adequately pleads the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place the defense in issue shifts to the petitioner.  The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.  Id. at 586.  The ultimate burden of proof of the defense is on the state.  Id. at 586.

Cause is a legitimate excuse for the default.  <u>Thomas v. Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991).  A demonstration of cause generally means that the petitioner must show that some objective factor external to the defense impeded efforts to construct or raise a claim, such as a showing that the factual or legal basis for a claim was not reasonably available, counsel was ineffective in failing to preserve a claim, or some interference by officials made compliance impracticable.  <u>Coleman v. Thompson</u>, 501 U.S. at 753 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 492 (1986)).

With regard to prejudice, a petitioner must show that actual prejudice resulted from the inability to raise the issue.  <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986).  This entails a showing that the errors worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  <u>Murray</u>, 477 U.S. at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)); <u>Leavitt v. Arave</u>, 383 F.3d 809, 830 (9th Dir. 2004); <u>Correll v. Stewart</u>, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

California's contemporaneous objection rule is adequate to support the judgment where a party fails to object to prosecutorial misconduct.  <u>Rich v. Calderon,</u> 187 F.3d 1064, 1069-70 (9th Cir. 1999) (declining to review various prosecutorial misconduct claims as procedurally barred for failure to lodge a contemporaneous objection).  However, a procedural default is not jurisdictional. <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997).  It proceeds from concerns of comity and federalism because a prisoner's failure to comply with a state's procedural requirement for presenting a federal claim has deprived the state courts of an opportunity to address the claim in

26

the first instance.   Coleman v. Thompson, 501 U.S. at 831-32.

A court may bypass an issue of procedural bar in the interest of judicial economy where the issue of procedural default is complex and the claim may easily be resolved against the petitioner. Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2), which permits a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (noting the power of appellate courts to reach the merits of habeas petitions if on their face and without regard to any facts that could be developed in a lower court, they are clearly not meritorious).

Here, the Court deems it more expeditious to address Petitioner's prosecutorial misconduct claims directly on the merits than to undertake an analysis of cause, prejudice, and miscarriage of justice.  The CCA analyzed Petitioner's various misconduct claims and concluded that an admonition could have cured the harm, and thus Petitioner had forfeited his right to appellate review of his misconduct claims.  (LD 4, 12-13.)  In the course of that analysis, the CCA found that "the Attorney General's benign characterizations of the prosecutor's comments are consistently more plausible than Pogue's malign characterizations."  (Id. at 12.)  However, the CCA also concluded that even if Petitioner had not forfeited his right to appellate review, the record of compelling evidence of his guilt persuaded the court that there was no reasonable likelihood that the jury misconstrued or misapplied the prosecutor's comments.  (Id. at 13.)  Likewise, in the present proceedings, Respondent argues that even if Petitioner's misconduct claims are considered on the merits,

Petitioner is not entitled to relief.  The issues have been considered by the state courts and are fully briefed in this proceeding.

B.   Prosecutorial Misconduct

It is clearly established federal law within the meaning of § 2254(d)(1) that a prosecutor's improper remarks violate the Constitution only if they so infect the trial with unfairness as to make the resulting conviction a denial of due process.  Parker v. Matthews, – U.S. –, 132 S.Ct. 2148, 2153 (2012) (per curiam); see, Darden v. Wainwright, 477 U.S. 168, 181 (1986); Comer v. Schriro, 480 F.3d 960, 988 (9th Cir. 2007).  Prosecutorial misconduct deprives the defendant of a fair trial as guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant.  United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir. 1988) (citing Smith v. Phillips, 455 U.S. 209, 219 (1982)).

The standard of review of claims concerning prosecutorial misconduct in a § 2254 proceeding is the narrow standard of due process, and not the broad standard that applies in the exercise of supervisory power; improper argument does not, per se, violate a defendant's constitutional rights.  Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (citing Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996)).  This Court must thus determine whether the alleged misconduct has rendered a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. at 183.  It must be determined whether the prosecutor's actions constituted misconduct, and whether the conduct violated Petitioner's right to due process of law.  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

To grant habeas relief, this Court must conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767-87). The standard of Darden v. Wainwright is a very general one that provides courts with more leeway in reaching outcomes in case-by-case determinations. Parker v. Matthews, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

In determining whether remarks in argument rendered a trial fundamentally unfair, a court must judge the remarks in the context of the entire proceeding to determine whether the argument influenced the jury's decision. Boyde v. California, 494 U.S. 370, 385 (1990); Darden v. Wainwright, 477 U.S. at 179-82. In Darden, the Court considered whether the prosecutor manipulated or misstated evidence, whether specific rights of the accused were implicated, the context of the remarks in light of both parties' arguments, the instructions given by the trial court, and the weight of the evidence. Darden, 477 U.S. at 179-82. The Court notes that the CCA articulated a federal legal standard consistent with the foregoing standards. (LD 4, 12.)

### 1.   Misstating the Burden of Proof

Petitioner argues that the prosecutor engaged in misconduct in argument by misstating the burden of proof.

### a.   The State Court Decision

The pertinent portion of the CCA's decision is as follows:

3. Argument to the Jury

Pogue argues that prosecutorial misconduct in argument to the jury denied him due process and that his attorney's failure to object was ineffective assistance of counsel. The Attorney General argues that Pogue forfeited his right to appellate review by failing to make a contemporaneous objection to each comment he characterizes as prosecutorial misconduct, that there was no prosecutorial misconduct, and that, even if there were, there was no prejudice.

To analyze the Attorney General's forfeiture argument, we turn to the portions of the record on which Pogue relies and to the differing characterizations by the parties of those portions of the record. The first instance of prosecutorial misconduct, Pogue argues, constitutes misstating the prosecutor's burden of proof beyond a reasonable doubt:

"I will point out to you, you are not to be influenced by pity or prejudice. That's important. That means you evaluate the evidence, not the defendant. Okay? He does not get an extra hand up, and he does not get a decrease. He is treated the same as every criminal defendant, with all the rights and everything that the Judge talked about, the presumption of innocence and the requirement that I prove this case beyond a reasonable doubt.

"But it also means you don't give him an extra hand up. You don't go back and say, well, you know, he might be guilty of this but we are going to cut him a break on that. That's not your duty. Your duty is first to decide the facts without pity or prejudice. Okay? What are they? Which ones are important, which facts count the most and which facts just are not, that are trivial or a side issue that don't really decide the case."

Pogue argues that the prosecutor's comments misstate the burden of proof by telling "the jurors that they could not err on the side of acquittal if they found that the defendant might be guilty." The Attorney General argues that the prosecutor's comments simply remind the jurors not to be influenced by pity for or prejudice against Pogue.

(LD 4, 7-8.)

30

b.  <u>Analysis</u>

If the prosecutor's reference to not giving the accused "an extra hand up" when a juror or the jury says he "might be guilty" is understood to refer to not acknowledging a reasonable doubt as to guilt, then it is possible that the remark could be understood as a modification of, or misstatement of, the burden of proof beyond a reasonable doubt.  However, if the comment is viewed in the context of the overall argument, it is reasonably understood as a statement intended to emphasize the prosecutor's argument concerning fact finding, namely, that considerations of sympathy or pity should not displace consideration of the evidence itself.  (3 RT 573:7-15.) His statement concerning the "extra hand up" was introduced as a comparison with "a decrease," neither of which was advocated by the prosecutor (<u>id.</u> at lines 17-20); the second reference to an extra hand up was immediately preceded by the prosecutor's argument that fact finding constitutes an evaluation of the evidence, and not the offender, who should be treated the same as every criminal defendant, "with all the rights and everything that the Judge talked about, the presumption of innocence and the requirement that I prove this case beyond a reasonable doubt" (<u>id.</u> at lines 17-20).  The prosecutor later repeated his point that the jury was "not to be influenced by pity or prejudice," "not to consider the defendant or his family," but "to consider only the facts, what has been proven in this case."  (3 RT 574:21-25.)

Counsel are given latitude "in the presentation of closing arguments," and courts must allow prosecutors "to strike hard blows based on the evidence presented and all reasonable inferences therefrom." Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting United States v. Baker, 10 F.3d 1374, 1415 (9th Cir. 1993)). A reviewing court should consider challenged remarks in light of the realistic nature of closing arguments at trial. "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.'" Williams v. Borg, 139 F.3d 737, 744 (9th Cir. 1998) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).

In determining whether remarks rendered a trial fundamentally unfair, a court must judge the remarks in the context of the entire proceeding to determine whether the argument influenced the jury's decision. Boyde v. California, 494 U.S. 370, 385 (1990); Darden v. Wainwright, 477 U.S. at 179-82. Here, a consideration of the prosecutor's statements in the context of the overall argument reflects that it is not reasonably likely a reasonable juror would have understood the prosecutor's argument as modifying or misstating the burden of proof which was the subject of instruction. The state court properly concluded that the prosecutor was reminding the

32

jurors not to be influenced by pity for, or prejudice against, Petitioner, and that in light of the strong body of evidence against Petitioner, Petitioner had not shown any harm or unfairness.

In sum, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, it will be recommended that this claim be denied.

### 2. Vouching and Denigration

Petitioner challenges the state court's decision that the prosecutor did not impermissibly and prejudicially vouch for the credibility of the victim or denigrate defense witness Lacara. The prosecution contends that the argument was a permissible comment on the witnesses' credibility and demeanor that lacked any personal assurances regarding the witnesses' credibility.

### a. The State Court Decision

The CCA summarized Petitioner's claim as follows:

The second instance of prosecutorial misconduct, Pogue argues, constitutes improperly vouching for the victim and improperly denigrating his girlfriend. With reference to the victim, his challenge arises out of the following comments:

"The other thing you picked up from the 9-1-1 call, in addition to how accurate [the victim] is in terms of who her attacker is and what he did and her prior contacts with him, is you can hear the emotion, the fear. Either she is the greatest actress of all time and she is in the wrong kind of work or it's real. This really happened to her, and the defendant really did it."

With reference to both the victim and his girlfriend, Pogue's challenge arises out of the following comments:

> "The last thing I would ask that you do is just remember the impact of [the victim]'s testimony. Of all the witnesses who testified over the last few days, my recollection is that only hers had that kind of power, that resonating power that tells you what she was saying was the truth. There was a silence in this courtroom that you can't fake. You can't fake that performance. Either she is in the wrong field and deserves an Academy Award, greatest actress of all time, or this is true and the defendant did this to her. Especially when you compare it to some of the other witnesses who maybe should have been a little more emotional. [Pogue's girlfriend] was [sic] almost no emotion.

> "She told you her story. She's been consistent. She was emotional. She was real. She cried on multiple occasions on the witness stand. The defendant did this. And, as I said, there's only one other alternative. And you would have to combine that with the defendant being the most unlucky guy in the world for all of those things to add up. And they only point towards guilt."

Pogue argues that by improperly contrasting the "less emotional demeanor" of his girlfriend with the "emotional demeanor" of the victim at trial the prosecutor's comments vouched for the victim and disparaged his girlfriend. The Attorney General argues that the prosecutor "was merely commenting on the witnesses['s] demeanor while testifying, a factor CALJIC No. 2.20 specifically told the jury they could consider when determining the believability of the witnesses."

(LD 4, 8-9.)

b. <u>Analysis</u>

Prosecutors may argue reasonable inferences based on the evidence, including that witnesses for one of the two sides are lying. <u>United States v. Necoechea</u>, 986 F.2d at 1276. In contrast, vouching consists of placing the prestige of the government behind a

34

witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony.  United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993).  Vouching for the credibility of a witness or expressing a personal opinion concerning the accused's guilt can pose two dangers.  First, it can convey the impression that evidence known by the prosecutor but not presented to the jury supports the charges, and thus it can jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury. United States v. Young, 470 U.S. 1, 18 (1985).  Second, the prosecutor's opinion reflects the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own assessment of the evidence.  Id. at 18-19.

When a prosecutor's argument violates the ethical principle that a lawyer not express a personal belief or opinion in the truth or falsity of any testimony or evidence, the violation must be viewed in context to determine whether the prosecutor's conduct affected the fairness of the trial.  Id. at 10-11.  To determine whether prejudicial error occurred, a court must consider the probable effect of the prosecutor's argument on the jury's ability to judge the evidence fairly.  Id. at 12.  Vouching for a witness's credibility is more likely to be damaging where the credibility of the witness is crucial.  United States v. Edwards, 154 F.3d 915, 921 (9th Cir. 1998).  Further, the Court is mindful that the standard of

Darden v. Wainwright is a very general one that leaves courts with more leeway in reaching outcomes in case-by-case determinations. Parker v. Matthews, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Here, the quoted passages relate to the consistency of the victim's reports and her demeanor while reporting the crime to a 911 operator and while testifying, as well as the demeanor of the Petitioner's girlfriend.  The comments were made in the context of the prosecutor's thorough discussion of the legal principles set forth in the instructions in light of the evidence before the jury. (3 RT 601-19.)  The prosecutor did not use the pronouns "I" or "we" or otherwise personalize his arguments concerning the victim or Alcala; the focus of his argument was the evidence and what inferences it warranted, and not his personal judgment of the evidence.  Further, he did not suggest that his arguments were based on any evidence that was not before the jury.

The state court properly concluded that the argument was a permissible and harmless comment upon the evidence as distinct from improper vouching or denigration.  The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, it will be recommended that this claim be denied.

///

///

36

3.   Appeal to Sympathy

Petitioner argues that the prosecutor improperly appealed to the jury based on sympathy by repeatedly referring to the emotionality of the victim during her 911 call and her testimony. Respondent argues that Petitioner's claim is indistinguishable from his vouching claim and fails for the same reasons.

a.   The State Court's Decision

The CCA's decision summarizing this claim is as follows:

The third instance of prosecutorial misconduct, Pogue argues, constitutes improperly appealing to the sympathy of the jurors for the victim. He grounds his claim partly in the comments he characterizes as vouching for the victim and denigrating his girlfriend and partly in later comments rejecting as "just not reasonable" the idea that Pogue's mother and girlfriend were "100 percent honest":

"It's not reasonable, and I submit to you that none of the people who testified during the prosecution's case lied to you. You saw their testimony. You were able to evaluate them. I didn't go through it yesterday, but you are able to consider their demeanor, their reaction on the witness stand. This is 2.20. Character and quality of the testimony. The demeanor and manner of the witness testifying. These are aids to guide you in judging credibility. [¶] ... [The victim]'s either the greatest actress of all time, when you consider her demeanor and manner of testimony, or she told you the truth."

Pogue argues that the prosecutor's comments improperly "appealed to the jurors' sympathy for [the victim] when he urged the jurors to consider [her] emotional state and tearfulness on the 911 recording and in court as evidence that [she] was credible." The Attorney General argues that the prosecutor's comments properly "discussed [the victim's] emotional state in the 911 tape and at trial as evidence of her believability."

(LD 4, 9-10.)

37

b.  <u>Analysis</u>

It is improper to appeal to the jurors' emotions and fears or to inform the jury that it has any duty other than weighing the evidence.  <u>United States v. Nobari</u>, 574 F.3d 1065, 1077 (9th Cir. 2009).

Here, the prosecutor's remarks came in response to defense counsel's argument.  Defense counsel argued that the emotionality of the victim and her inconsistent testimony regarding her age and the period of delay before she reported the crime rendered her an unreliable witness.  Further, the DNA evidence could be explained by secondary transfer, and Petitioner's girlfriend and mother had been with the Petitioner throughout the relevant time period.  (3 RT 621-40.)  The prosecutor commented on defense counsel's attack on every piece of evidence that directly pointed to Petitioner as the perpetrator, including the victim's testimony, whereas Petitioner's mother and girlfriend were presented as accurate and unbiased.  (3 RT 641-42.)  The prosecutor argued that this was not a reasonable view of the evidence, and he then made the statements in question.

The text of his statements shows that he was not asking the jury to be swayed by the mere fact of emotion, divorced from the pertinent circumstances; rather, he sought to direct the jurors' attention to the character and quality of the victim's report and testimony.  To the extent he mentioned the victim's emotions, it was in the course of an argument that her emotional reactions were

indicative of her veracity.  The state court properly concluded that

it was not reasonably likely that a rational juror would

misunderstand this argument as advocating not consideration of the

demeanor of the witnesses and the character of their testimony in

connection with determining the witnesses' credibility, but rather

as an inappropriate appeal to passion or prejudice.

In sum, the state court's decision was not contrary to, or an

unreasonable application of, clearly established federal law.  Thus,

it will be recommended that this claim be denied.

### 4.   Shifting the Burden of Proof

Petitioner argues that the prosecutor improperly argued that

acquittal required the wholesale rejection of the prosecution's

evidence and thereby misstated and shifted the burden of proof.

### a.   The State Court Decision

The portion of the CCA's decision summarizing this claim is as

follows:

> The fourth instance of prosecutorial misconduct, Pogue
> argues, constitutes improperly attempting to shift the
> burden of proof by arguing an acquittal was impossible
> without a wholesale rejection of the prosecution's
> evidence:
>
>> "It's interesting that counsel attacks every
>> piece of evidence that directly points at his
>> client. Her witness identifications, we went
>> through factors every day. She passes with
>> flying colors. So they have to find a way to
>> chuck that out. Okay. So in addition to being
>> either grand conspirators or incompetent, [the
>> victim] is a liar. That's what you would have to
>> believe to find him not guilty. [¶] You'd also

have to believe that [the victim's stepfather] is in on it and he is also a big liar and completely lied to you. And [the victim's mother] is a liar. [The victim's neighbor] is a liar. [The criminalist] from the crime lab is a liar. And [the first officer to arrive at the crime scene] is a liar. But at the same time-especially when you talk about [the criminalist], who does not know Mr. Pogue, and all the officers who never met him prior to that day.

"... And, again, in order to find this defendant not guilty you'd have to believe not only that [the victim] lied but everybody else did and they were able to put this grand conspiracy together between eight o'clock in the morning and noon, when the defendant is arrested for the second time. Including all the DNA, the phone numbers, his booking. I mean he hadn't even been booked yet. They are all out to get him. Therefore, he must be not guilty. It's just not reasonable. [¶] ... [¶]"

"Again, you'd have to believe the officers are out to get him, and they don't know him. [The criminalist] is out to get him, even though she doesn't know him. You have to believe [the forensic DNA analyst] is incompetent. He testified that he normally gets swabs. 60 to 70 percent of the time he gets swabs. He does not get the actual items of evidence. So you have to believe there's a grand conspiracy between [the criminalist] at the D.A.'s lab and [the forensic DNA analyst] at an independent lab to try and frame him, who they don't know. It's just not reasonable."

Pogue argues that the prosecutor's comments improperly told "the jurors that they had to reject the testimony of the prosecution witnesses in their entirety to acquit." The Attorney General argues that the prosecutor's comments were "a proper response" to the evidence at trial and to the closing argument of Pogue's trial attorney.

(LD 4, 10-11.)

b.  Analysis

Petitioner argues that the misconduct resulted in a misstatement of the burden of proof because proof beyond a reasonable doubt did not require the jury to choose between the alternatives of conviction or a determination that all the prosecution witnesses had lied.  Petitioner argues that the misconduct violated Petitioner's right to due process of law.

Respondent contends that the state court did not unreasonably apply clearly established federal law; it articulated the relevant due process standard, along with the relevant state standard, and applied those standards to this case.  Further, its decision was not based on an unreasonable application of the facts in the record. The state court identified and quoted the relevant portions of the prosecutor's argument and reasonably found that the prosecutor's comments did not amount to misconduct.

Credibility is a matter to be decided by the jury; thus prosecutors who argue the false alternatives of acquittal might improperly shift the burden of proof to the defense.  See, United States v. Ruiz, 710 F.3d 1077, 1082 (9th Cir. 2013).  However, prosecutors must be given reasonable latitude to argue reasonable inferences based on the evidence, including that defense witnesses and their testimony were incredible.  Id. at 1083.

Further, the prosecutor's comments must be viewed in the context of both parties' arguments in determining whether the

41

prosecutor's behavior amounted to prejudicial error. The Court must consider the probable effect the prosecutor's response on the jury's ability to judge the evidence fairly. Both defense counsel's conduct and the nature of the prosecutor's response are relevant. United States v. Young, 470 U.S. 1, 11 (1985).

Here, defense counsel challenged the reliability of the victim's testimony because of her emotionality at the time of the crime and thereafter, her inconsistent statements concerning her age and the amount of time that elapsed after the perpetrator's departure and her 911 call; and her limited contact with Petitioner before the crime. Defense counsel implied that Lacara, who had been characterized as showing no emotion, was more reliable. (3 RT 621, 626-27.) Counsel noted that the victim delayed in reporting that Petitioner's number was in her telephone as belonging to a "neighbor," and there was a delay in Garcia's reporting Petitioner's visit to the home the night before the crime with a request for black tape; he noted that "we also know that Mr. Pogue does not smoke," and he described Cantu's testimony that he saw Petitioner outside smoking that morning as "to bolster the case." (Id. at 629:18-20.) He pointed out what he characterized as "fudging" on the part of a criminalist and challenged her methods (id. at 623-24). He also argued that the DNA on Petitioner's clothing was due to secondary transfer by the officers who came into contact with Petitioner (id. at 624-25). Counsel stated the following:

> What's happened in this case is Mr. Burich got in
> his mind that it was Mr. Pogue, and the case went
> from there.  He was going to prove it was Mr. Pogue.
> And then the Garcias and the Cantus, they are trying
> to put all this stuff together to show it was Mr. Pogue.

(Id. at 629:21-26.)  He accused officers of suggesting that

Petitioner was the perpetrator by showing to the victim in the

hospital pictures of Petitioner; he argued, "From then on it's in

her mind that this young man is the one that stabbed her.  And from

then on they try to put the case together."  (Id. at 630:4-6.)  He

asserted that "they" did not know about the footprints' not matching

Mr. Pogue's shoes and the lack of blood on Petitioner's clothes, but

they had an identification.  He argued:

> So they are going to try to put this case on
> identification and bolster her testimony.  That's
> why we have Mr. Cantu coming in and talking about I
> was watching him, and Mr. Garcia coming in with the
> tape.  Because they want to bolster that testimony
> because the physical evidence does not show it.

(Id. at 630:10-16.)  He argued that it was illogical that Petitioner

was outside to smoke simply because family members living in the

same home smoked, and that his being outside at 7:30 a.m. an hour

before the crime "didn't happen."  (Id. at 632:22-27.)  He

challenged the Officer Hessler's account that she thought the

washing machine was running, looked in, and saw only whites, and

argued as follows:

> You know, if there was bloody clothes in there,
> that she would have stopped the machine and taken
> them out.  If there's any clothes in there, they
> would have stopped the machine.  When they came back

43

> later they take it out and they see it's sheets,
> just like Ms. Morgan testified to; that there were
> sheets in the washing machine."

(Id. at 633:19-25.)  He challenged the victim's description of her

fingernails as short, and he pointed to photographic evidence

indicating that there was "stuff" under the nails of the victim's

thumb and finger.  (Id. at 634-35.)  He claimed the investigation

lacked an adequate search of the victim's home, and he emphasized

that Officer Burich stated he learned from the investigation that he

"was too anxious to prove what the witness said, what the victim

said, that this was the guy," and that "physical evidence is as

important if not more important than eyewitness evidence."  (Id. at

636:23-28.)  Defense counsel analogized this to mistaken

identifications on the street, "[e]specially when you have cross-

racial identifications." (Id. at 637:5-6.)  He stated he was "not

sure that [the victim] ever had any contact with Mr. Pogue."  He

argued it was not possible for Petitioner to commit the crime and be

apprehended shortly thereafter without a trace of blood, bloody

clothes, or shoes connecting him to the crime, and that the

testimony of Lacara and Petitioner's mother supported that

conclusion.  (Id. at 638-39.)

      The prosecutor's rebuttal argument responded to the major

arguments of defense counsel, namely, that the percipient defense

witnesses were unreliable or dishonest; the law enforcement staff

involved in the investigation were dishonest or incompetent; and law

enforcement and the witnesses were working together to pin the crime on Petitioner despite a lack of physical evidence of guilt.  The prosecutor explained the defense arguments as a method of neutralizing what was otherwise a solid eyewitness identification by the victim, who knew the perpetrator, and other, consistent evidence; the prosecutor's repeated references to having to find that witnesses lied or, on occasion, "completely lied" (LD 4, 10) were thus responses to concrete suggestions and inferences that defense counsel argued to the jury.

Under the circumstances, it could reasonably be concluded that rational jurors would not understand the prosecutor's rebuttal argument to suggest that the jurors had to choose between conviction or rejecting the prosecution's witnesses in their totality.  When viewed in context, the prosecutor's statements are a response to defense counsel's specific contentions concerning the evidence in the course of the prosecutor's argument that the defense theory of the case was unreasonable.  Considering the context, it is not probable that the prosecutor's argument would affect the jury's ability to judge the evidence fairly or have any significant impact on the jury's deliberations.

Further, in addition to receiving instructions concerning the burden of proof, the jury was instructed that the court's instructions must be followed if they conflicted with anything said by counsel concerning the law, (2 CT 322), and that statements made

by attorneys during the trial were not evidence (id. at 324).

Instructing the jury that lawyers' comments and argument are not

evidence can cure the harmful effect of isolated instances of

improper argument.  Sassounian v. Roe, 230 F.3d 1097, 1107 (9th Cir.

2000).  Arguments of counsel carry less weight with a jury than do

instructions from the court.  Boyde v. California, 494 U.S. at 384-

85.

     In sum, the state court decision that the prosecutor's rebuttal

argument was not prejudicial misconduct was not contrary to, or an

unreasonable application of, clearly established federal law.  The

prosecutor had set forth the conflicting evidence and argued why the

jury should accept the testimony of the prosecution's witnesses and

the consistent physical evidence.  The evidence against the

Petitioner included a compelling eyewitness identification and

consistent physical evidence, and the jury was correctly instructed

on the burden of proof and how to evaluate the statements or

arguments of counsel.  The Court concludes that the argument was not

prejudicial and did not materially affect the fairness of the

Petitioner's trial.  Accordingly, it will be recommended that this

claim be denied.

          5.   Disparagement of Defense Counsel

     Petitioner argues that the prosecutor disparaged defense

counsel by accusing counsel of misleading the jury, thereby

violating Petitioner's rights to counsel and procedural due process of law.

### a.   The State Court's Decision

The CCA's summary of this claim is as follows:

The fifth instance of prosecutorial misconduct, Pogue argues, constitutes improperly disparaging defense counsel:

"So, ladies and gentlemen, what it bottoms out to is the defense is just throwing up anything they can to try and cloud the issues and confuse things. They don't like the DNA because it points directly at him. So they have got to make it go away. They don't like the witness identification even though she passes under every category that the law tells you to consider. They have got to get rid of that. So she must be lying. The defense just isn't reasonable. It does not match with the actual evidence in the case. [¶] ... [¶] Ladies and gentlemen, bottom line is the defense is trying to throw out anything that they think you might snag onto, but none of them are reasonable. You can't have a grand conspiracy but be incompetent. You can't have a grand conspiracy but have a bunch of liars and never get tripped up and are the greatest actresses of all time. It does not add up, it does not make sense, and it's unreasonable. And that's the burden."

Pogue argues that the prosecutor's comments improperly attacked "defense counsel's integrity." The Attorney General argues that the prosecutor's attack not on defense counsel personally but on deficiencies in the defense case was proper.

(LD 4, 11-12.)

### b.   Analysis

Although a criticism of defense theories and tactics can constitute misconduct, United States v. Santiago, 46 F.3d 885, 892

47

(9th Cir. 1995), cert. denied 515 U.S. 1162 (1995), criticism of defense theories and tactics is a proper subject of closing argument, United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir. 1997).

The prosecutor's remarks did not expressly or impliedly refer to defense counsel generally or to the institution of defense counsel; they instead focused on the defense in the case.  The prosecutor did not affirmatively accuse counsel of misconduct; the prosecutor instead stated that the defense was attempting to cloud and confuse the issues and cause the jurors to dismiss the eyewitness identification and DNA evidence.  Although the prosecutor's characterization of the function of the defense argument was not kind, the essence of the prosecution's argument was that the prosecution's version and theory of the case, and not the defense's approach, was supported by both reason and the evidence. The terms of the prosecutor's argument, when viewed in context, including all argument of the parties and the strong evidence of Petitioner's guilt, support the that the challenged statements constituted proper argument on the deficiencies of the defense theories and tactics, and not an impermissible, personal attack on defense counsel.

In sum, the state court decision was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, it will be recommended that this claim be denied.

6.  <u>Substantive Due Process</u>

Petitioner argues that to the extent the prosecutor's misconduct violated state law standards of professional conduct, Petitioner suffered a denial of substantive due process of law.

The substantive component of due process protects against governmental interference with those rights "implicit in the concept of ordered liberty." <u>Palko v. Connecticut</u>, 302 U.S. 319, 324-25 (1937).  It forbids the government from infringing on fundamental liberty interests, such as the right to liberty, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993).  However, narrow tailoring is required only when fundamental rights are involved; the impairment of a lesser interest requires only that there be a reasonable relationship between the governmental purpose and the means chosen to advance that purpose. <u>Id.</u> at 305.  The legitimate interests of the government must be weighed against the individual's liberty interest. <u>Cruzan by Cruzan v. Director, Missouri Dept. of Health</u>, 497 U.S. 261, 279 (1990).

To the extent Petitioner claims that prosecutorial misconduct constituted a denial of substantive due process, Petitioner has failed to demonstrate facts warranting a conclusion that the alleged instances of misconduct, singly or in combination, resulted in prejudice or denied Petitioner his right to a fundamentally fair trial.  Although Petitioner alleges he suffered a denial of substantive due process, he has not set forth specific facts that warrant a conclusion that he suffered an injury with respect to a protected liberty interest without the requisite procedural

processes and protections or without a legally sufficient, countervailing governmental interest.  As an accused charged with a criminal offense, Petitioner had the benefit of a panoply of trial rights and procedural protections, including the assistance of counsel.

To the extent Petitioner seeks this Court to adjudicate the prosecutor's compliance with state law standards of professional conduct, the Court declines to do so because federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. at 67-68.  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).

In sum, Petitioner has not shown that the state court decision contravened or constituted an unreasonable application of clearly established federal law with respect to substantive due process.  To the extent Petitioner raises a state law issue concerning counsel's conduct, the claim should be dismissed as not cognizable in this proceeding.

VII.   Ineffective Asistance of Counsel

Petitioner contends his trial counsel was ineffective for failing to object to the previously discussed prosecutorial misconduct.

The CCA decided that Petitioner had not shown that counsel's failure to object to the misconduct was not the result of a reasonable tactical decision.  (LD 4, 13.)

50

The evidence against Petitioner was strong, and the alleged prosecutorial misconduct was not of a nature that resulted in any fundamental unfairness in the proceedings.  The state court properly concluded that Petitioner had not suffered a violation of his due process right to a fundamentally fair trial as a result of any misconduct by the prosecution.  It was thus reasonable for the state court to decide that it was within the range of counsel's reasonable tactical decisions not to object to the alleged prosecutorial misconduct.  Further, no party has noted any portion of the record that demonstrates counsel's decision not to object to the misconduct was not a reasonable tactical decision.

In sum, the state court properly concluded that Petitioner had not suffered a violation of his right to the effective assistance of counsel.  Accordingly, it will be recommended that Petitioner's claim of ineffective assistance of counsel for failing to object to alleged prosecutorial misconduct be denied.

VIII.   <u>Sentencing Error</u>

Although Petitioner raised sentencing error in his original petition (doc. 1, 16-18), review of the FAP shows that the only reference to sentencing error appears in the table of contents (doc. 34, 4); there is no argument in the text of the FAP.  The argument headings in the table state that the sentencing court erroneously imposed enhancements for both personal use of a weapon and infliction of great bodily injury based on Petitioner's single act

of using the knife contrary to Cal. Pen. Code § 654, which in some circumstances limits sentences for multiple crimes based on the commission of a single act.  (Id.)

Local Rule 220 provides that unless prior approval is obtained from the Court, every pleading as to which an amendment or supplement is permitted shall be retyped or rewritten and filed so it is complete in itself without reference to the prior or superseded pleading.  Thus, pursuant to Rule 220, Petitioner's FAP superseded his original petition.

Here, only a very conclusional claim of sentencing error is stated in the FAP.  To the extent that Petitioner's argument headings are understood to articulate a claim for relief, the Court concludes that the claim is not cognizable in this proceeding.

The Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that there has been any attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law.  This Court cannot review the state court's interpretation or application of Cal. Pen. Code § 654.  A claim alleging misapplication of state sentencing law involves a question of state law which is not

52

cognizable in a proceeding pursuant to 28 U.S.C. § 2254.  See, Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (rejecting a claim that a state court misapplied state statutes concerning aggravating circumstances on the ground that federal habeas corpus relief does not lie for errors of state law); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (dismissing as not cognizable claims alleging only that the trial court abused its discretion in selecting consecutive sentences and erred in failing to state reasons for choosing consecutive terms); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (dismissing as not cognizable a claim concerning whether a prior conviction qualified as a sentence enhancement under state law); Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on other grounds, Mayle v. Brown, 538 U.S. 901 (2003) (finding not cognizable on federal habeas review a claim of error in declining to strike a prior conviction).

Accordingly, Petitioner's claim concerning the erroneous application or interpretation of Cal. Pen. Code § 654 should be dismissed because it is not cognizable in a 28 U.S.C. § 2254 proceeding.

IX.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court should decline to issue a certificate of appealability.

X.  Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1      1) The first amended petition be DISMISSED insofar as

2 Petitioner raises state law claims, and the remainder of the

3 petition be DENIED;

4      2) Judgment be ENTERED for Respondent; and

5      3) The Court DECLINE to issue a certificate of appealability.

6      These findings and recommendations are submitted to the United

7 States District Court Judge assigned to the case, pursuant to the

8 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

9 Rules of Practice for the United States District Court, Eastern

10 District of California.  Within thirty (30) days after being served

11 with a copy, any party may file written objections with the Court

12 and serve a copy on all parties.  Such a document should be

13 captioned "Objections to Magistrate Judge's Findings and

14 Recommendations."  Replies to the objections shall be served and

15 filed within fourteen (14) days (plus three (3) days if served by

16 mail) after service of the objections.  The Court will then review

17 the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

18 The parties are advised that failure to file objections within the

19 specified time may waive the right to appeal the District Court's

20 order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22

23 IT IS SO ORDERED.

24   Dated:   **March 28, 2014**                    **/s/ Sheila K. Oberto**

25                                              UNITED STATES MAGISTRATE JUDGE

26

27

28

55